# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge William J. Martínez

Civil Action No. 16-cv-1622-WJM

EUGENE R. MARES,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Eugene R. Mares ("Mares") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), partially denying his application for disability insurance benefits. Although Mares claimed disability beginning on August 22, 2008, an administrative law judge ("ALJ") ruled that Mares first became disabled within the meaning of the Social Security Act on November 7, 2012, and awarded benefits from that date forward. This appeal followed, challenging only the ALJ's conclusion that Mares was not disabled before November 7, 2012.

For the reasons set forth below, the ALJ's decision that Mares was not disabled before November 7, 2012 is vacated and this case is remanded to the Commissioner for further proceedings consistent with this order.

## I. BACKGROUND

Mares was born in 1949, and was 59 years old on the alleged onset date of

August 22, 2008. (Administrative Record ("R.") (ECF No. 8) at 294.) He graduated from high school and has an associate's degree, with a certificate in computer-assisted drafting, and he has also been certified as a home inspector. (R. at 28, 71.) In the last fifteen years, Mares has worked as an architectural draftsman and a construction estimator for concrete projects. (R. at 28, 371.)

Mares applied for disability insurance benefits on March 31, 2009. (R. at 294.) He claimed he is disabled due to head and neck injuries, memory problems, and diabetes. (R. at 362.) His application was initially denied on November 17, 2009. (R. at 99.) Mares requested and received a hearing in front of an ALJ, William Musseman. (R. at 34–50.) On December 1, 2010, ALJ Musseman issued a decision finding Mares not disabled. (R. at 103–14.) Mares appealed to the Social Security Appeals Council, which granted review, vacated ALJ Musseman's decision, and remanded with instructions for further development of the record and a new decision. (R. at 119–21.) ALJ Musseman held a new hearing (R. at 51–61), and then issued a new decision on January 25, 2013, this time concluding that Mares became disabled on September 1, 2010, but not before (R. at 127–36). Mares appealed the unfavorable portion of this ruling to the Appeals Counsel, which again vacated the entire decision and remanded with instructions for further development and analysis, and also directed that a new ALJ be assigned. (R. at 145–48.)

The new ALJ, Kathryn D. Burgchardt, convened a third hearing. (R. at 62–98.)[1] At the hearing, the ALJ made clear that it was her task to reevaluate Mares's disability

---

[1] All future references to "the ALJ" in this Order are to ALJ Burgchardt.

application completely anew, with no deference to any previous conclusion, including the conclusion that Mares became disabled at least as of September 1, 2010. (R. at 65–68.) On February 2, 2015, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]

At step one, the ALJ found that Mares had not engaged in substantial gainful activity since his alleged onset date of August 22, 2008. (R. at 17.) Although Mares had earned money since that date through self-employment as a home inspector and architectural draftsman, the ALJ concluded that his earnings were not enough to qualify as "substantial gainful activity" under the relevant regulation. (*Id.*)

At step two, the ALJ found as follows with regard to Mares's severe impairments:

> Since the alleged onset date of disability, August 22, 2008, the claimant has had the following severe impairments: status post cervical fusion at C5–6; degenerative disc disease of the cervical spine and status post head injury[.] Beginning on the established onset date of disability, November 7, 2012, the claimant has had the following severe impairments: status post cervical fusion at C5–6; degenerative disc disease of the cervical spine; status post head injury and memory impairment.

(*Id.* (citation omitted).)

At step three, the ALJ found that Mares's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security

---

[2] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

regulations. (R. at 20.)

Before proceeding to step four, the ALJ assessed Mares's residual functional capacity ("RFC"). The ALJ concluded that Mares's RFC before November 7, 2012 was as follows:

> capacity to perform light work as defined in [the applicable regulation] except the claimant was able to lift or carry 10 pounds frequently and 20 pounds occasionally; stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; sit, with normal breaks, for a total of six hours in an eight-hour workday; perform pushing and pulling motions with the upper and lower extremities within the weight restrictions given. The claimant should have avoided unprotected heights and moving machinery. The claimant was able to occasionally climb ramps and stairs, stoop and crouch and should [have] never climb[ed] ladders, ropes or scaffolds. He was able to frequently balance, kneel and occasional[ly] . . . reach [overhead] with the bilateral upper extremities.

(R. at 20–21.) Then, at step four, the ALJ concluded that Mares could have resumed his previous work as an architectural draftsman and construction estimator, up until November 7, 2012. (R. at 27.) Thus, the ALJ found Mares "not disabled" before that point, and had no need to analyze step five for this time period. (R. at 28.)

By contrast, the ALJ found that Mares's memory impairment was sufficiently established as of November 7, 2012, thus limiting his RFC to "semi-skilled [occupations], with a specific vocational preparation level (SVP) of one, two or three." (R. at 26.) The ALJ's step four analysis for this time period concluded that such an RFC would prevent Mares from resuming his past relevant work. (R. at 27.) Finally, at step five, the ALJ found that the Commissioner's Medical-Vocational Rule 202.06 directed a finding of "disabled" in light of Mares's age. (R. at 28.)

4

Mares appealed the portion of the ALJ's ruling regarding his disability status before November 7, 2012, to the Appeals Council. (R. at 7–8.) The Appeals Council denied review. (R. at 1–6.) Mares then filed this action seeking review of the ALJ's February 2, 2015 decision as to his disability status before November 7, 2012. (ECF No. 1; ECF No 11 at 16–17.)[3]

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

Mares offers six challenges to the ALJ's decision, all of them attacking the

---

[3] All ECF page citations are to the page number in the ECF header, which does not always match the document's internal pagination due to prefatory material such as a table of contents.

pre-November 7, 2012 RFC formulated by the ALJ. (*See* ECF No. 11 at 3.) Three of these challenges relate to the ALJ's exclusion of mental restrictions from that RFC, and the remaining three challenges relate to the ALJ's decisions regarding Mares's physical restrictions. The Court finds that Mares's challenges regarding his physical restrictions (which he designates as Issues 2, 3, and 4) are dispositive.

The ALJ formulated her physical RFC assessment by weighing the opinions of three physicians, Dr. Shauna Grace, Dr. Kenneth Danylchuk, and Dr. Jack Rook. Dr. Grace, a state agency examining physician, rendered the first opinion, dated June 13, 2009. (R. at 435.) Dr. Grace noted tenderness of Mares's neck and upper back muscles but no radiation of pain, and no loss in motor strength. (R. at 438.) Dr. Mares also noted "slight tenderness" in Mares's lower lumbar spine. (*Id.*) Dr. Grace ultimately concluded that Mares was "able to stand and walk for up to six hours, with some limitation from cervical pain and lower back pain, and sitting up to six hours, limited by lower back pain." (R. at 439.) Dr. Grace also opined that Mares could lift twenty pounds occasionally and ten pounds frequently, limited only by cervical pain; and he could occasionally climb, balance, stoop, kneel, crouch, and crawl, limited by his lower back pain. (*Id.*)

The ALJ gave "substantial weight" to Dr. Grace's opinion for two reasons: (1) it was "supported by her exam findings showing well preserved strength and sensation in all extremities"; and (2) it was "consistent with [Mares's] conservative treatment history." (R. at 25.) The second reason refers to the ALJ's repeated observation that Mares did not seek treatment often and, when he did seek treatment, he frequently failed to follow his doctors' recommendations—thus suggesting that, during the relevant time period,

his conditions were not as severe as he claimed. (*See* R. at 20, 24, 25.)

On August 26, 2010, Dr. Danylchuk provided his opinion of Mares's functioning. (R. at 514–17.) Dr. Danylchuk, an orthopedic specialist, had seen Mares twice in April 2010 on account of a January 2010 car accident in which Mares was rear-ended, leading to "increasing neck pain with decreased range of motion and ringing in the years." (R. at 513.) Dr. Danylchuk had viewed an MRI that "reveal[ed] a broad-based disc bulge creating spinal stenosis" in Mares's neck. (R. at 512.) However, in Dr. Danylchuk's August 2010 functional assessment, he diagnosed "*lumbar* disc bulge & spinal stenosis." (R. at 514 (emphasis added).)

Mares "believes it is obvious that Dr. Danylchuk inadvertently said 'lumbar' when he meant to say 'cervical.'" (ECF No. 11 at 24.) But the rest of Dr. Danylchuk's opinion is consistent with a lack of cervical limitation. In particular, later in the opinion Dr. Danylchuk selected the "no" option in response to the questions "Does the patient's condition restrict his ability to use his upper extremities?" and "Does the patient's condition restrict the postural ability of his neck?". (R. at 515–16.) Moreover, Dr. Danylchuk selected the "yes" option when asked if Mares was "able to hold [his] head in the position to allow [him] to" handle paperwork at a desk, type on a keyboard, and view a computer screen "as would be done during a typical 8-hour work day." (R. at 516.)

Dr. Danylchuk nonetheless opined that Mares could occasionally lift up to ten pounds but could only sit for about thirty minutes at a time and only for four hours during an eight hour workday. (R. at 514.) Moreover, according to Dr. Danylchuk, Mares can only stand, stoop, squat, crawl, and kneel for one hour in an eight hour

7

workday. (R. at 514–15.)

The ALJ gave "little weight" to Dr. Danylchuk's opinion largely because his treatment notes contained nothing to justify the lumbar diagnosis and the restrictions on sitting, standing, etc., that apparently flowed from that diagnosis. (R. at 25–26.)

On October 12, 2010, Dr. Rook filled out a functional assessment. (R. at 522–23.) Dr. Rook, apparently a physical rehabilitation specialist, had seen Mares once, about a month earlier, when Mares came seeking treatment for neck pain related to his January 2010 car accident. (R. at 520.) Dr. Rook opined that Mares could "occasionally" (up to one-third of a workday) reach, handle, and finger with both hands; and that Mares could "rarely" (less than ten repetitions per day) flex his neck forward or backward, or rotate it right or left. (R. at 522–23.) He selected the "no" option when asked if Mares was "able to hold [his] head in the position to allow [him] to" handle paperwork at a desk, type on a keyboard, and view a computer screen "as would be done during a typical 8-hour work day." (R. at 523.)

The ALJ gave "little weight" to Dr. Rook's opinion for two reasons. First, the ALJ found that Dr. Rook's "clinical examination findings do not correlate with the manipulative limitations given. . . . Dr. Rook's brief examination of the claimant[] showed only tenderness in the cervical spine and reduced range of motion with no neurologic deficits or loss of range of motion in the upper extremities." (R. at 26.)[4] It appears that the ALJ was referring to the following passage from Dr. Rook's record of Mares's sole visit:

---

[4] The ALJ frames these as two different reasons for discounting Dr. Rook's opinion, but to the Court sees no difference between the two.

> On evaluation of the upper extremities, biceps, triceps and brachial radialis reflexes were 2+ and symmetrical bilaterally. Grip strength was normal bilaterally. Upper extremity motor strength was normal bilaterally. Pinprick sensation was intact in all 10 fingers and in a C5 distribution bilaterally.
>
> Proximally, there was moderate to severe tenderness with palpation of bilateral pectoral and scalene muscles.
>
> Cervical range of motion was decreased in all planes.
>
> On palpation of neck and back musculature, the patient had increased muscle tone with severe tenderness of bilateral paracervical muscles, the upper trapezii, and the levator scapula muscles.

(R. at 520.)

The ALJ's second reason for discounting Dr. Rook's opinion was "internal[] inconsisten[cy], in that Dr. Rook also noted that the claimant's neck condition does not affect his ability to do paperwork at a desk, read paper work, type/keyboard or view a computer monitor/screen." (R. at 26 (emphasis removed).) All parties agree that the ALJ must have misread Dr. Rook's report in this instance, given that Dr. Rook's opinion unambiguously shows that he believed Mares could *not* perform any of those tasks. (*See* ECF No. 11 at 21; ECF No. 12 at 18–19; R. at 523.)

In sum, the ALJ gave essentially controlling weight to Dr. Grace's 2009 opinion, which predated Mares's January 2010 car accident and Dr. Danylchuk's and Dr. Rook's subsequent opinions. This raises questions of whether the ALJ relied on a "patently stale opinion." *Chapo v. Astrue*, 682 F.3d 1285, 1293 (10th Cir. 2012); *see also id*. at 1292 ("Thus, while Dr. Amin's opinion may have been 'supported by and consistent with the medical evidence of record' when he gave it in early 2008, it does not account for material objective evidence developed long afterward."). The ALJ could only rely on

9

Dr. Grace to the exclusion of Dr. Danylchuk and Dr. Rook by concluding that the latter two doctors' opinions added essentially nothing new, or nothing credibly new, to the record. But the number of problems in the ALJ's analysis of Dr. Danylchuk's and Dr. Rook's respective opinions are enough to convince the Court that sole reliance on Dr. Grace's opinion did not amount to substantial evidence of Mares's physical RFC before November 7, 2012.

First, with respect to Dr. Danylchuk's opinion, the ALJ's major problem appears to have been that Dr. Danylchuk focused on lumbar rather than cervical problems.[5] This is true, and somewhat curious given that Mares had come to Dr. Danylchuk complaining of neck pain, not lower back pain. But regardless, the ALJ was still required to assess all of Mares's potential functional limitations, severe and nonsevere.

The ALJ understood this. (*See* R. at 16 ("In making [an RFC] finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe." (citing 20 C.F.R. §§ 404.1520(e) & 404.1545; SSR 96-8p)); R. at 20 ("this [lumbar] condition has been considered in formulating the claimant's [RFC]").) Instead of entirely ignoring Dr. Danylchuk's lumbar-related restrictions, the ALJ announced that those restrictions deserved no consideration because "Dr. Danylchuk offers no explanation for the views he expressed regarding the effects of a back impairment." (R. at 26.) This explanation, however, is equally true of Dr. Grace's opinion—yet the ALJ relied on Dr. Grace's *lumbar-related* restrictions to formulate

---

[5] Notably, although Dr. Danylchuk opined, consistent with Dr. Grace, that Mares had no restrictions with respect to neck movement, arm movement, fingering, etc. (R. at 515–16), the ALJ did not credit this portion of Dr. Danylchuk's opinion. Rather, the ALJ gave "very little weight" to Dr. Danylchuk's entire opinion. (R. at 26.)

10

Mares's physical RFC.  The single mention of lumbar problems in Dr. Grace's opinion is a "slight tenderness to palpation in the lower lumbar spine."  (R. at 438.)  Lumbar pain was not one of Dr. Grace's diagnoses, in contrast to head and neck pain.  (R. at 439.)  Yet Dr. Grace invokes Mares's lumbar pain to justify limitations on standing, walking, and sitting to six hours per day.  (*Id*.)  The ALJ adopted these precise limitations when formulating Mares's RFC.  (R. at 20–21.)  Thus, assuming Dr. Danylchuk intentionally opined about lumbar restrictions (as opposed to mixing up his opinions regarding lumbar and cervical restrictions), there remains a question why his unexplained lumbar restrictions deserved "very little weight "while Dr. Grace's unexplained lumbar restrictions deserved controlling weight.  Without some cogent explanation, this appears to be essentially a form of "cherry picking" that the Tenth Circuit has long warned against.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

Second, with respect to Dr. Rook's opinion, the Court cannot say that the ALJ's misreading of that opinion, which all parties acknowledge, was harmless.  The ALJ gave only two reasons for disregarding Dr. Rook's opinion, one of which was based on a clearly erroneous reading of the relevant medical documents.  As for the other reason, it is highly suspect.  The ALJ reasoned that Dr. Rook's manipulative and postural restrictions do not flow from his clinical findings, but it is not clear the ALJ is qualified to make that conclusion.  Dr. Rook noted, for instance, moderate to severe tenderness in muscles of the neck and upper back, and reduced cervical range of motion.  The Court can find no basis in the record for the ALJ's conclusion that these findings cannot justify Dr. Rook's manipulative and postural limitations.

Thus, the ALJ favored Dr. Grace's older opinion over Dr. Danylchuk's and Dr. Rook's newer and better-informed opinions based on invalid reasons. Substantial evidence accordingly did not support the ALJ's RFC determination with respect to Mares's physical abilities. Remand is therefore required for further proceedings on this question.

Because the Court vacates and remands for the reasons stated above, the Court need not address the other arguments Mares raises. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006). The Court expresses no opinion as to Mares's other arguments and neither party should take the Court's silence as tacit approval or disapproval of those arguments. The Court also does not intend by this opinion to suggest the result that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand. *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case]. Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision that Mares was not disabled before November 7, 2012 is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 11th day of May, 2017.

BY THE COURT:

William J. Martinez
United States District Judge